# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**THOMAS ALAN FAULK, ET AL.**          **\*CIVIL NO. 6:16-0244**

**VERSUS**                                               **\*JUDGE DOHERTY**

**SHELL PIPELINE CO., LP**              **\*MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is the defendant's Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6), FRCP. [rec. doc. 6].  By this Motion, the defendant, Shell Pipeline Co., LP ("Shell") seeks dismissal of the claims of plaintiffs Thomas Alan Faulk, Dolores W. Faulk Family, LLC, Jeffrey Charles Faulk, Michael Walton Faulk, William Winston Faulk, Cheryl Elizabeth Walton, Karen Elise Walton Dubose, Pamela Lynn Walton, Katherine Patrice Hains, Janis Lynn Walton Coignard, James E. Knobloch, Nicole J. Knobloch Wallace, Katherine R. Knobloch, Joanna Vail Walton and Bernard L. Knobloch, Jr. (collectively "Non- F&W plaintiffs").  No Opposition to the Motion has been filed, and the delay allowed for the filing of an opposition has expired.[1]

For those reasons set out below, it is recommended that the Motion to Dismiss be **granted** and that the claims of the Non-F&W plaintiffs be dismissed with prejudice

---

[1]L.R. 7.5 requires that written opposition to a motion be filed within twenty-one (21) days after service of the motion.

pursuant to  Rule 12(b)(6), FRCP, for failure to state a claim upon which relief may be granted.

## BACKGROUND

F&W Farms, a Louisiana partnership, and the Non-F&W plaintiffs filed the instant lawsuit in a Louisiana state court, seeking damages for breach of contract.  The lawsuit was subsequently removed to this Court.

In their Complaint, the plaintiffs allege that on January 23, 2014, the Non-F&W plaintiffs executed a "Pipeline Right of Way", attached (in its entirety) to the Complaint as Exhibit A, in which they granted Shell a permanent non-exclusive right of way on a tract of land located in Acadia Parish, Louisiana,  to "construct, operate, maintain, inspect, test, repair, replace and remove" a pipeline.  [rec. doc. 1-1, ¶ 2].  That same date, plaintiffs allege that Shell, F&W Farms, as the lessee/tenant/farmer of the Non-F&W plaintiffs, and the Non-F&W plaintiffs also contemporaneously executed Exhibits B and C to the "Pipeline Right of Way". [*Id* at  ¶ ¶ 3 and 5].

The  "Pipeline Right of Way" was granted in consideration for the sum of $100.00 and certain obligations owed by Shell that are contained in the instrument, including those contained in Exhibits B and C. [rec. doc. 1-1, pg. 10,  ¶ 2; 1-1, pg. 15, § 26].

Exhibit B identifies F&W Farms as the lessee/tenant/farmer of the Non-F&W plaintiffs and expressly states the terms, manner and timing of compensation to be paid by Shell under the right of way.  More specifically, paragraph A of Exhibit B states that "Compensation to the [Non-F&W plaintiffs] shall be made at the time the [Non-F&W plaintiffs] sign this servitude agreement."  Paragraph B of Exhibit B states "[c]ompensation to the lessee/tenant/farmer [F&W Farms] shall be made in the proportions of 10% at the time the [Non-F&W plaintiffs] and lessee/tenant/farmer sign this agreement and the remaining balance shall be paid at least forty five (45) days prior to entry on to the land to begin construction but in no event later than November 15, 2014."  Paragraph C of Exhibit B states that "Exhibit C attached hereto contains the agreement to the damages **payable to the lessee/tenant/farmer**.  Lessee/tenant/farmer agrees to make any payments due to [Non-F&W plaintiffs] for [Non-F&W plaintiffs'] share of crop proceeds according to the contract or agreement they have with the [Non-F&W plaintiffs] immediately upon receipt of the payment from [Shell]."  (Emphasis added)  Therefore, the contract clearly contemplated that funds for crop damage, as opposed to compensation, were to be paid by Shell to F&W Farms.

Paragraph D states that "construction of this pipeline will take place between January 2015 and October 2015. Crop damages contained in Exhibit 'C' are calculated for the 2015 rice crops and for the 2015/2016 crawfish crop.  In recognition of the fact

that lessee/tenant/farmer begins preparing the fields for the following year's crop on or around October 15, it is agreed that if the construction is not completed by October 15, 2015, an additional crop damage payment on the same terms and conditions contained in Exhibit C will be made at the time for the 2017 rice and 2017/2018 crawfish crop." [rec. doc. 1-1, pg. 29].

Exhibit C sets forth the calculation of crop "damages owed to farmer."  Exhibit C, like Exhibit B, states that "Farmer will be responsible for paying the landowner's share of the crop damages for those landowners who receive a share of the crops." [rec. doc. 1-1, pg. 36].  Attachment C to Exhibit C is a "Crop Consultant Evaluation" preformed by Garber & Associates, LLC, which calculates the rice and crawfish crop losses and additional losses associated with the pipeline project in the total amount of $416,195.10. [rec. doc. 1-1, pg. 39].

In their Complaint, the plaintiffs allege that Shell paid "F&W Farms for and on behalf of F&W Farms and the owners of the servitude" the initial 10%, $14, 619.51, at the time the agreement was executed.  However, they allege that Shell failed to pay the remaining 90%, $332,956.08, that was due on or before November 15, 2014. [rec. doc. 1-1, pg. 5,  ¶ 7].  The plaintiffs further allege that because Shell did not complete the pipeline by October 15, 2015, an additional $416,195.10 was owed. [*Id*. at  ¶ 8].  All of these sums represent crop damages which F&W Farms, as lessee/tenant/farmer,

allegedly could not realize because of its inability to plant its rice crop and seed crawfish on the subject property. [*Id*. at ¶ 10; *see also* ¶ ¶ 9 and 13]. The Complaint alleges that these damages are owed to "F&W Farms individually and on behalf of its landlords (owners)" and more specifically, to the Non-F&W plaintiffs "through their designee, F&W Farms" on account of Shell's alleged breach of contract. [*Id*. at ¶ 11].

## Rule 12(b)(6) Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); F.R.C.P. 12(b)(6). However, it is proper to consider documents that a defendant attaches to a motion to dismiss, if such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim, as they form part of the pleadings. *Id*. at 498-499. Finally, in deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *Cinel v. Connick*, 15 F.3d 1338, 1343 fn.6 (5th Cir. 1994).

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796 *quoting Iqbal*, 129 S.Ct. at 1949.   This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Coleman v. Sweetin*, - - F.3d - - , 2014 WL 958275, *4 (5th Cir. 2014) *citing Iqbal*, 129 S.Ct. at 1949 and *Twombly,* 550 U.S. at 557. However, a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id. quoting Iqbal*, 556 U.S. at 678 *quoting Twombly*, 550 U.S. at 555.

## LAW AND ANALYSIS

The essential elements of a breach of contract are threefold.  First, a plaintiff in a breach of contract claim must prove that the obligor undertook an obligation to perform.  *Sanga v. Perdomo,* 167 So.3d 818, 822 (5th Cir. 2014) *citing Favrot v. Favrot*, 68 So.3d 1099, 1109  (La. App. 4 Cir. 2011) and La. C.C. art. 1994; *Ramos v. Swiftships Shipbuilders, LLC*, 2015 WL5024641, *5 (W.D. La. 2015) (Doherty, J).

Next, they must prove that the obligor failed to perform the obligation, resulting in a breach. *Id.* Finally, the failure to perform must result in damages to the obligee. *Id.* Generally, the damages in breach of contract cases are governed by the four corners of the contract. *Id. citing Corbello v. Iowa Prod.*, 850 So.2d 686, 714 (La. 2003).

Shell argues that the Non-F&W plaintiffs have failed to allege that Shell owed them any obligation to pay them crop damages.  They further argue that under the terms of the contract,  any crop damages that may be due under the contract at issue are owed solely to F& W Farms, the designated lessee/tenant/farmer of the property which is the subject of the servitude agreement. Thus, the Non-F&W plaintiffs have not stated a cause of action for breach of contract because they suffered no damage as a result of the alleged breach of contract.  The Court agrees.

The servitude agreement does not provide for payment of crop damages to the Non-F&W plaintiffs.[2]  To the contrary, those damages are set forth in the agreements attached thereto as Exhibits B and C and clearly set forth the obligation of Shell to pay

---

[2]Section 26 states that the consideration for the servitude ($100.00) "includes full and complete payment for any and all damages", except those referred to in paragraphs 13, 14 and 17, which the Non-F&W plaintiffs "may have sustained or may sustain as a result of any and all operations involved in or related to the initial construction of the above described pipeline . . . ." Plaintiffs do not allege, however, that Shell conducted any operations on the property or that any such action caused them damages.  Indeed, Shell states in its Opposition to the Motion and its Answer to the Complaint (¶ 20) that the pipeline project was scrapped and canceled  before any construction commenced.

crop damages to F&W Farms, not the Non-F&W plaintiffs.[3]  Exhibit B obligates Shell to pay crop damages to the "lessee/tenant/farmer" that is, F&W Farms.  Likewise, Exhibit C obligates Shell to pay crop "damages owed to the farmer [F&W Farms]", who in turn "will be responsible for paying the landowner's [the Non-F&W plaintiffs'] share of the crop damages. . . ."  The language cannot be clearer. Indeed, the contractual language precludes the payment of crop damages to any party other than F&W Farms. As such, the Non-F&W plaintiffs have no cause of action for crop damages under the contract at issue, their claims are therefore subject to dismissal.

## CONCLUSION

Based on the foregoing, it is recommended that the Motion to Dismiss [rec. doc. 6] be **granted** and, accordingly, that the claims of plaintiffs Thomas Alan Faulk, Dolores W. Faulk Family, LLC, Jeffrey Charles Faulk, Michael Walton Faulk, William Winston Faulk, Cheryl Elizabeth Walton, Karen Elise Walton Dubose, Pamela Lynn Walton, Katherine Patrice Hains, Janis Lynn Walton Coignard, James E. Knobloch, Nicole J. Knobloch Wallace, Katherine R. Knobloch, Joanna Vail Walton and Bernard

---

[3]The Court notes that F&W Farms is an alleged Louisiana partnership which under Louisiana law has capacity to sue in its own right.  *Maroil, Inc. v. Capitol Towing, Ltd.*, 2009 WL 1789429, *2 (E.D. La. 2009) *citing* La. Civ.Code art. 2801 and comment (e), *Trappey v. Lumber*, 229 La. 632, 86 So.2d 515, 517 (La. 1956), *Dantzler v. Gilchrist*, 704 So.2d 341, 342 (La. App. 3rd Cir. 1997), *Cortiza v. Rosenblat,* 291 So.2d 425, 428 (La. App. 4th Cir. 1974) and *Coast v. Hunt Oil*, 96 F.Supp. 53, 56 (E.D. La.1951); *see also State v. Morales,* 240 So.2d 714 at fn. 3 (La. 1970).

L. Knobloch, Jr.  be **dismissed with prejudice** pursuant to  Rule 12(b)(6), FRCP, for failure to state a claim upon which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 3rd day of May, 2016, at Lafayette, Louisiana.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**

COPY SENT:

DATE:  5/4/2016
BY:         EFA
TO:         RFD

cg

9